TUCKER ELLIS LLP
David J. Steele – SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll – SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen – SBN 246364
steven.lauridsen@tuckerellis.com
Dina Roumiantseva – SBN 300576
dina.roumiantseva@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

Attorneys for Plaintiffs
Coachella Music Festival, LLC and
Goldenvoice, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COACHELLA MUSIC FESTIVAL, LLC and GOLDENVOICE, LLC, <br><br> Plaintiffs <br><br> v. <br><br> COACHILLIN HOLDINGS, LLC, KENNETH DICKERSON, COACHILLIN BREWHOUSE LLC, COACHILLIN BRANDS LLC, COACHILLIN HOSPITALITY CORPORATION LLC, AND COACHILL-INN LLC, <br><br> Defendants. | Case No. 5:22-cv-01882 <br><br> **COMPLAINT FOR** <br> **(1) TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114; (2) FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125; (3) UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*; COMMON LAW TRADEMARK INFRINGEMENT; AND (4) CANCELLATION/REFUSAL OF TRADEMARK APPLICATIONS UNDER 15 U.S.C. § 1119** <br><br> **DEMAND FOR TRIAL BY JURY** |

TUCKER ELLIS LLP
Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

Plaintiffs Coachella Music Festival, LLC ("CMF") and Goldenvoice, LLC (collectively, "Plaintiffs") by and through their attorneys, Tucker Ellis LLP, file their complaint against Defendants Coachillin Holdings, LLC ("Coachillin Holdings"), Kenneth Dickerson ("Dickerson"), Coachillin Brewhouse LLC ("Coachillin Brewhouse"), Coachillin Brands LLC ("Coachillin Brands"), Coachillin Hospitality Corporation LLC ("Coachillin Hospitality"), and Coachill-Inn LLC ("Coachill-Inn") (collectively, "Defendants") for injunctive relief and damages as follows.

Plaintiffs allege as follows, upon actual knowledge with respect to themselves and their own acts, and on information and belief as to all other matters.

## INTRODUCTION

1. Plaintiffs organize and produce the annual Coachella Valley Music & Arts Festival, commonly known as "Coachella" (the "COACHELLA Festival") which occurs at the Empire Polo Club in Indio, CA. The COACHELLA Festival is one of the most critically acclaimed music and art festivals in the world, with multiple bands performing on several stages, art installations, and food vendors. Each April[1], the COACHELLA Festival attracts an aggregate of nearly 750,000 attendees to the southern Californian Coachella Valley, which has a population of fewer than 200,000 people, according to recent Census information. Tickets to the festival quickly sell out, and the COACHELLA Festival is important for tourism in southern California. In addition, the livestream of the festival and subsequently posted recordings are viewed by millions of viewers. Since its inception in 1999, The COACHELLA Festival has become a cultural phenomenon, with performances by some of the biggest stars in the music industry and appearances by numerous celebrities. The COACHELLA Festival also includes camping facilities for attendees, lodge accommodations, and hotel packages. A wide range of COACHELLA-branded apparel and merchandise is sold and advertised at the

---

[1] The COACHELLA Festival was not held in person in 2020 and 2021 due to the COVID-19 pandemic; however, a YouTube Original documentary, "Coachella: 20 Years in the Desert" debuted online on April 10, 2020 and has been viewed at over 6,793,000 times. The COACHELLA Festival returned in person in 2022.

COACHELLA Festival, on the festival website, through the COACHELLA Festival app, and on social media. Plaintiffs also offer a large variety of related goods and services in connection with the COACHELLA Festival.

2.      The public has come to associate the phrase "Coachillin" to refer to the COACHELLA Festival and Plaintiffs, not merely to refer to the Coachella Valley—and certainly not Coachillin Holdings or its Coachillin Business Park. It is well-settled law that, to establish rights in a trademark, a party need not have actually used a mark if the public nevertheless associates the mark with the goods or services of that party. Here, "Coachillin" is a portmanteau, combining the name of the COACHELLA Festival with the word "chilling." For many years, attendees of the festival, celebrities, and musicians have referred to the COACHELLA Festival and commented with respect to their attendance, their outfits, or the culture related to the COACHELLA Festival by using the phrase "Coachillin." In fact, many attendees of the COACHELLA Festival have commemorated the occasion by posting images on social media and websites of themselves and their friends at the COACHELLA Festival with the hashtag #coachillin or the phrase "coachillin." Festival attendees began using the hashtag #coachillin and the word "coachillin" to refer to the COACHELLA Festival and Plaintiffs many years before Defendants were incorporated (from 2016-2022) or any other priority or use date that Defendants may claim. There are tens of thousands of such posts, the vast majority of which refer to the COACHELLA Festival, as shown in these two exemplars from 2012:



TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

3.      In fact, the term "coachillin" has become so closely identified with Plaintiffs and the COACHELLA Festival that it is defined as such in the online *Urban Dictionary*, an over twenty-year-old website comprising a dictionary of slang or cultural words or phrases and that, as of 2014, had over 7 million definitions with about 2,000 new entries being added daily. These definitions are quality controlled based on peer review, thus serving as a barometer of public perception. A screenshot of the *Urban Dictionary* entry for "coachillin" appears below:

---

[2] These posts and additional posts showing use of the #coachillin hashtag to refer to COACHELLA Festival at least as early as 2012 are included in Exhibit 7, referenced below.

# Coachillin

𝕏  f

1. (verb) - to be in a pure state of bliss while surrounded by your friends and
loved ones on an amazing journey of art, music and dancing.

2. the act of going to, or hanging out at, **Coachella** **Music Festival**, **Indio CA**.

*Zaffiro: "Where are you? I just **got to** the **festival***

*Cunana: "Yo! We're Coachillin in **VIP**"*

**by PositivePanda** April 20, 2011

👍 20    👎 2                                                     ⚑ FLAG

**urbandictionary.com/define.php?term=Coachillin**

4.     Popular news websites and blogs have also referred to Plaintiffs and the COACHELLA Festival by using the phrase "Coachillin," including for example TMZ.com, which has featured celebrities attending the COACHELLA Festival since at least as early as 2005, by using the heading "Stars in the Desert -- Coachillin'!"

5.     While the public understands the phrase "Coachillin" to refer to the words "chilling" at the COACHELLA Festival, Defendant Coachillin Holdings has previously represented to CMF that it chose to name its company and mark COACHILLIN because "COACHILLIN is a coined term playing off of the 'chillin' vibe and experience provided by the Coachilin' [*sic*] Canna-Business Park."

6.     Defendant Coachillin Holdings made this representation despite its own admission that, at the time when it conceived of the COACHILLIN Mark, it was aware of the COACHELLA Festival, as well as Plaintiff CMF, the owner of the COACHELLA Marks (defined below).

7.     Defendant Coachillin Holdings was formed in California in 2016, seventeen years after the first COACHELLA Festival was held in 1999. Coachillin' Holdings was formed by a number of individuals, including Mr. Dickerson. The other corporate Defendants were formed after 2016.

8.      At the time that Defendant Coachillin Holdings was formed in California in 2016, Coachillin Holdings listed its address as 46-883 Monroe Street, Suite 203, Indio, California. That address is located just 2.1 miles north of the Empire Polo Club, where the COACHELLA Festival is held. Google directions show that one dooes not need to make any major turns during the approximately five-minute drive 2.1 miles south on Monroe Street from Coachillin Holding's business address to the COACHELLA Festival.



9.      Despite this geographic proximity between the COACHELLA Festival and Defendant Coachillin Holdings' initial address, and despite the popularity of the COACHELLA Festival in Indio, CA, Defendant Coachillin Holdings has claimed that—at the time when it chose to use the mark COACHILLIN—it did not know that COACHELLA owned trademarks related to COACHELLA or that "Coachillin" referred to chilling at the COACHELLA Festival.

10.      Despite Defendant Coachillin Holdings' contentions, Defendants have not been shy about making a false association with the COACHELLA Festival in advertising

Defendants' goods and services, including its apparel and business complex.

11. By way of example, Defendants specifically target attendees of Plaintiffs' COACHELLA Festival in promoting Defendants' COACHILLIN-branded merchandise, as shown in the following screenshot from Defendant Coachillin Holdings' Instagram account dated March 28 2018 (shortly before the April 2018 COACHELLA Festival). Not only is this post tagged "#COACHELLAfest[ival]" with "Coachella Valley Music & Arts Festival" listed as a geotag immediately below Defendant Coachillin Holdings' handle, @coachillinbizpark, but it is also specifically states that the merchandise is "just in time for #Coachellafest[,]" thereby trading on the COACHELLA Festival's name and marks, including the COACHILLIN Mark for Defendants' own benefit:



12. In an effort to capitalize on COACHILLIN' and its association with the COACHELLA Festival, Defendants are intentionally trading on the goodwill of Plaintiffs' COACHELLA Marks and the COACHELLA Festival—despite having no connection with either and without the authority of Plaintiffs—by using the COACHILLIN Mark. In an effort to capitalize on a perceived association between COACHILLIN' and Plaintiffs' COACHELLA Festival, Defendants refer to Plaintiffs' COACHELLA Festival in their advertising in connection with cannabis-focused cultivation, a business park, a hotel, and

-6-

an entertainment complex in Southern California known as the "Coachillin' Industrial Cultivation & Ancillary Canna-Business Park" or the "Coachillin' Canna-Business Park." For example, Defendants' Coachillin' Canna-Business Park is advertised as having the following "Additional Location Benefits" which refer to the COACHELLA Festival by name:

- "Popular among celebrities and a tourism industry with an impact of over $6 Billion annually"
- "Coachella Valley is home to Coachella (Coachella Valley Music & Arts Festival) & Stagecoach (Country Music Festival)"

13.    In addition, Defendants' complex is advertised to include an amphitheater for concerts and live entertainment, including music performances, artists, and food vendors.

14.    After Plaintiffs raised concerns with Defendant Coachillin Holdings that its mark is unauthorized and trading off of Plaintiffs' COACHELLA Marks, which occurred at least as early as September 30, 2018, Defendants did not cease use and instead created additional affiliated companies and filed a slew of additional applications to register trademarks using the word "Coachillin" or "Coachillin'" (with or without an apostrophe) or "Coachill Inn".

15.    On information and belief, Defendants' hotel is intended to be called the "Coachill-Inn" or "Coachill Inn," and Defendants sells COACHILLIN' brand apparel on their website. Upon information and belief, Defendant Coachillin Holdings recently sold the hotel property to Defendant Coachill-Inn.

16.    Upon information and belief, Defendants are preparing to sell beer and spring water under the "Coachillin" mark.

17.    According to Defendant Coachillin Holdings, an individual named Jeremy Joseph was one of three people involved in the creation of the COACHILLIN mark. As a result, before adopting the COACHILLIN' mark (with an apostrophe), Defendant acquired two trademark registrations (Nos. 4,597,127 and 5,170,824) for COACHILLIN (without an apostrophe) from Mr. Joseph. Mr. Joseph testified under oath in a cancellation

TUCKER ELLIS LLP

Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

proceeding for those registrations before the Trademark Trial and Appeal Board ("TTAB") at the United States Patent and Trademark Office ("USPTO") that he specifically selected the COACHILLIN mark as a trademark to convey a "chill" vibe in connection with the COACHELLA Festival. That testimony is consistent with Mr. Joseph's specimen filed with the USPTO in connection with one of his trademark applications for COACHILLIN. As shown below, this specimen included specific details about the location (Empire Polo Club) and date (April 2014) for the COACHELLA Festival being held that year, as shown in the screenshots below:



18.   Mr. Joseph also testified that, during negotiations, he discussed with Defendant Coachillin Holdings' representative the "significant potential value [of the Coachillin' mark] with respect to [the] Coachella [Festival], and in particular the potential to monetize the mark." With full knowledge of these facts, Defendant Coachillin Holdings acquired these registrations from Mr. Joseph and subsequently applied for its own series of COACHILLIN marks[3] rather than come up with a unique and creative name of its own.

_____

[3] Mr. Joseph's deposition testimony also indicated that these two registrations were

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

19.     Plaintiffs have no objection to Defendants' agricultural cultivation business, merchandise business, hotel operations, or entertainment complex, including Defendants hosting live music and entertainment at that facility; however, Defendants must use a distinctive name that does not infringe or trade on the goodwill of Plaintiffs' reputation and widely known COACHELLA Marks. Despite repeated requests from Plaintiffs to Defendants to change the COACHILLIN Mark to one which avoids confusion and a false association with the famous COACHELLA Festival, Defendants have failed to do so. Accordingly, Plaintiffs have been forced to file this action to protect the COACHELLA Marks from infringement, and to protect the public from the likelihood of confusion caused by Defendants' willful and unauthorized use of the COACHILLIN Mark, especially for live music, accommodations, and related merchandise, including apparel.

## THE PARTIES

20.     Plaintiff Coachella Music Festival, LLC is a limited liability company organized and existing under the laws of the State of Delaware, having a principal place of business in Los Angeles, California. Coachella Music Festival, LLC owns the COACHELLA trademark and other intellectual property rights in connection with the COACHELLA Festival.

21.     Plaintiff Goldenvoice, LLC is a limited liability company organized and existing under the laws of the State of California, having a principal place of business in Los Angeles, California. Goldenvoice, LLC produces the COACHELLA Festival with CMF.

22.     Defendant Kenneth (also known as "Kenny") Dickerson is an individual, who upon information and belief is a California resident and current or former founder, owner, and/or operator of various business entities located in Southern California, including at

---

procured fraudulently. Subsequent to this deposition testimony, Defendant Coachillin Holdings filed papers in the cancellation proceeding to surrender (and thus allow the cancellation of) these two registrations. While it is proper for these registrations to have been canceled, Defendants remain responsible for their intent in acquiring these registrations and for their predecessor-in-interest's intent in adopting and applying for the registrations.

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

least Defendant Coachillin Holdings and Defendant Coachillin Brewhouse. Based on his own statements to the USPTO, Plaintiffs allege that Dickerson is the moving, conscious, and driving force of the conduct alleged in this complaint. Mr. Dickerson has represented to the USPTO that Coachillin Holdings and Coachillin Brewhouse were organized and are currently managed by Mr. Dickerson and his relatives and share an address at 71713 Highway 111, Suite 100 Rancho Mirage, CA 92270. Mr. Dickerson has represented to the USPTO that "the selection, adoption, and approval for use of the COACHILLIN trademarks for both [Coachella Brewhouse] and Coachillin Holdings LLC, flows through Kenny Dickerson as the Managing Member of Coachillin Holdings." Thus Mr. Dickerson is personally liable for the acts of the other corporate defendants.

23.     Defendant Coachillin Holdings, LLC is a limited liability company organized and existing under the laws of the State of California, having a principal place of business at 71713 Highway 111, Suite 100, Rancho Mirage, California. Defendant is doing business as COACHILLIN'.

24.     Defendant Coachillin Brewhouse LLC is a limited liability company organized and existing under the laws of the State of California, having a principal place of business at 71713 Highway 111, Suite 100, Rancho Mirage, CA 92270. Coachillin Brewhouse was formed in the State of California on or around November 13, 2017. Mr. Dickerson has represented to the USPTO that Coachillin Holdings owns a stake in Coachillin Brewhouse. Mr. Dickerson has represented to the USPTO that "a clear legal relationship exists" between Coachillin Holdings and Coachillin Brewhouse, stating that those two "companies operate in a cohesive and synergistic manner such that the common goals, objectives and plans of the companies are being met."

25.     Defendant Coachillin Brands LLC is a limited liability company organized and existing under the laws of the State of California, having a principal place of business at 18776 Blue Dream Crossing, Desert Hot Springs, CA 92240. Coachillin Brands was formed in the State of California on or around July 21, 2019. On information and belief,

Coachillin Brands was formed to hold intellectual property rights in the COACHILLIN Marks or to produce and/or sell merchandise in connection with those marks.

26.     Defendant Coachillin Hospitality Corporation LLC is a limited liability company organized and existing under the laws of the State of Delaware, having a principal place of business 3411 Silverside Rd Tatnall Bldg #104, Wilmington, DE 19810, and a mailing address listed at the California Secretary of State as 71713 Highway 111, Suite 105, Rancho Mirage, CA 92270. Coachillin Hospitality was formed in the State of California on or around March 16, 2022. On information and belief, Coachillin Hospitality was formed to offer hotel services in connection with the COACHILLIN Mark, including variations such as COACHILL-INN.

27.     Defendant Coachill-Inn LLC is a limited liability company organized and existing under the laws of the State of California, having a principal place of business at 18698 N. Indian Canyon Dr. Desert Hot Springs, CA 92240, and a mailing address listed at the California Secretary of State as 71713 Highway 111, Suite 105, Rancho Mirage, CA 92270. Coachill-Inn LLC was formed in the State of California on or around January 2, 2019. On information and belief, Coachillin Hospitality was formed to offer hotel services in connection with the COACHILLIN Mark, including variations such as COACHILL-INN.

28.     On information and belief and based on Mr. Dickerson's representations to the USPTO discussed above, each of the Defendants is an alter ego of one another or is a direct participant in the infringing activities of each other.

## JURISDICTION AND VENUE

29.     This case is a civil action arising under the Lanham Act, 15 U.S.C. §§ 1114, 1125, *et seq.*, the California Business and Professions Code § 17200, *et seq.*, and California common law.

30.     This Court has subject matter jurisdiction over the trademark claims in this Complaint pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act),

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (any Act of Congress relating to patents or trademarks).

31.     This Court has supplemental jurisdiction over the claims arising under California law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because the asserted state claims are substantially related to the claims arising under the Lanham Act, such that they form part of the same case or controversy.

32.     This Court has personal jurisdiction over Defendants because they reside in California and because Defendants are conducting and soliciting business in California, and have substantial contacts within this judicial district. The acts of Defendants have caused, and are continuing to cause, injury to Plaintiffs within this judicial district.

33.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and a substantial part of property that is the subject of the action is situated in this judicial district.

## PLAINTIFFS' COACHELLA MUSIC FESTIVAL, TRADEMARKS, AND SERVICE MARKS

34.     CMF owns and, with Golvenvoice, LLC, produces the COACHELLA Festival, one of the country's premier music and arts festivals. Printouts of several news stories about the COACHELLA Festival are attached to this Complaint as Exhibit 1. The caption from one photograph accompanying a story from CNN reads, "[a]n aerial view taken from a helicopter on Sunday shows how big the [2011] festival is."

35.     Held annually at the Empire Polo Club in the beautiful Southern California desert, the COACHELLA Festival is one of the most critically acclaimed music festivals in the world. The entire festival site, which includes the festival grounds, on-sight camping, parking and support operations, encompass over 800 acres.

36.     The COACHELLA Festival was first held in October 1999 and drew some 25,000 attendees into the California desert in Southern California. Over the years,[4] both

_____

[4] COACHELLA was next held in April 2001 and has been held annually thereafter, except as mentioned above in 2020 and 2021, when the festival was postponed due to the

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

the COACHELLA Festival's attendance and its prominence have grown. Attendance to the sold-out COACHELLA Festival, aggregated over the multi-day event, now totals nearly 750,000 attendees per year.

37.     For the past several years when the festival has been held live, tickets to the COACHELLA Festival sell out, and typically sell out in about an hour. Printouts of several news stories about the COACHELLA Festival selling out are attached to this Complaint as Exhibit 2.

38.     The COACHELLA Festival showcases some of the most groundbreaking artists from all genres of music along with a substantial selection of art installations from all over the world. The COACHELLA Festival attracts some of the world's biggest mega-stars to perform. The list of artists who have performed includes Beyoncé, Beastie Boys, Bjork, Cardi B, Coldplay, Daft Punk, Dr. Dre & Snoop Dogg, Foo Fighters, Guns N' Roses, Jane's Addiction, Jay-Z, Kanye West, Lady Gaga, Leonard Cohen, Madonna, Paul McCartney, Prince, Radiohead, Red Hot Chili Peppers, The Cure, and The Weeknd, to list only a very few.

39.     The COACHELLA Festival is about more than just music. The festival's venue also includes camping facilities for some 15,000 attendees (complete with a karaoke lounge and a general store), on-site lodges, and an amazing selection of food and beverages from a wide range of restaurants. The festival also features extensive art exhibits, including sculpture and interactive and immersive art. The music, the food, the art, and of course, the fellowship of other attendees, taken together, makes the COACHELLA Festival more than just a concert to attend—it truly is an experience.

40.     Plaintiffs also use their COACHELLA Marks in connection with the provision of travel and accommodations packages for attendees to the COACHELLA Festival. For instance, Plaintiffs' authorized licensee, Valley Music Travel, arranges

COVID-19 pandemic.

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

transportation to the festival, hotels, accommodations at the festival site, and even customizable concierge packages to enhance the festival-going experience.

41.   In addition to the licensed travel and accommodation packages offered through Valley Music Travel, Plaintiffs have, since at least as early as 2010, provided numerous lodging options under the COACHELLA Marks, including hotel accommodation services. By way of example, festival attendees have the option to camp in care or tents or to rent luxury on-site Safari "tent" accommodations. These Shakir-style tents offer all the comforts of a traditional hotel room, including a private check-in area, on-site at the COACHELLA Festival.

42.   As mentioned above, Plaintiffs also offer restaurant services in connection with the COACHELLA Marks, including a wide variety of cuisines ranging from pizza and hamburgers to vegan and gluten-free options, as well as signature specialty cocktails, a central food market with numerous vendors and shaded seating, and food from top restaurants from across the globe featuring everything from ice cream to sushi. The COACHELLA Festival also features a restaurant service referred to as "Outstanding in the Field," which comprises table dining allowing festival goers to mingle with other guests over a full-service, four-course family style meal, including cocktails and wine. These are but a few of the many restaurant and dining options available at the COACHELLA Festival.

43.   Accordingly, the large variety of COACHELLA-branded merchandise available to festival attendees includes a wide range of apparel for men, women, and children. Many attendees commemorate the festival experience by purchasing such merchandise.

44.   Plaintiffs own and operate the COACHELLA Festival's website, available at www.coachella.com. This website received over 20 million page views in 2019 and hosted nearly 8.5 million users over nearly 12 million sessions. Screen captures of Plaintiffs' website, available at www.coachella.com, are attached to this Complaint as Exhibit 3.

45.     Plaintiffs also produce a mobile app for COACHELLA for use on iPhone / iPad and Android devices. Screen captures of Plaintiffs' app from iTunes and Google are attached to this Complaint as Exhibit 4.

46.     Plaintiffs extensively promote their COACHELLA Festival through a variety of media, including via the Internet on its website, available at www.coachella.com, and on numerous social media sites including Facebook, Twitter, and Instagram, to list a few. Screen captures of COACHELLA's YouTube, Facebook, Twitter, and Instagram accounts are attached to this Complaint as Exhibit 5. As can be seen from Exhibit 5, COACHELLA's YouTube account has over 2.4 million subscribers; its Facebook account has over 2.4 million followers; its Twitter account has over 1 million followers; and its Instagram account has over 2.4 million followers.

47.     Plaintiffs and their affiliates have invested substantial sums in media and related content to promote the COACHELLA Festival.

48.     Tracked online media impressions (advertisements) for COACHELLA from March 29, 2019 through May 3, 2019 exceeded 130 million impressions.

49.     Over 500 credentialed journalists, from print media, radio, television, and the Internet reported live from the 2019 COACHELLA Festival. The journalists represented media outlets such as diverse as Time, Billboard, and the BBC.

50.     Plaintiffs own the exclusive trademark and service mark rights to the distinctive COACHELLA trademark and service mark, having used the mark in connection with the festival and related goods and services since the first COACHELLA Festival in 1999.

51.     Similarly, Plaintiffs own the exclusive trademark and service mark rights to the distinctive COACHELLA (stylized) trademark and service mark, having used the mark in connection with the festival and related goods and services since the first festival in 1999. The stylized mark is depicted below:

# COACHELLA

52.     Plaintiffs also own the exclusive trademark rights to the distinctive COACHELLA VALLEY MUSIC AND ARTS FESTIVAL trademark and service mark, having used the mark in connection with the festival and related goods and services since the first festival in 1999.

53.     The COACHILLIN, COACHELLA, COACHELLA (stylized), and COACHELLA VALLEY MUSIC AND ARTS FESTIVAL marks are collectively referred to in this Complaint as the "COACHELLA Marks."

54.     Since 1999, Plaintiffs' use of the COACHELLA Marks has been extensive, continuous, and substantially exclusive.[5]

55.     The COACHELLA Festival and the COACHELLA Marks have been the subject of extensive newspaper articles, magazine articles, television and Internet news stories. *See* Exhibits 1-2.

56.     Plaintiffs have made, and continue to make, a substantial investment of time, effort and expense in the production and promotion of the COACHELLA Festival and the COACHELLA Marks.

57.     The COACHELLA Marks are unique and distinctive and, as such, designate a single source of origin.

58.     As a result of Plaintiffs' efforts and use, the COACHELLA Marks have come to be recognized by the public and members of the trade as being associated exclusively with Plaintiffs and the COACHELLA Festival.

59.     Plaintiffs expend substantial effort and expense to protect the COACHELLA Marks' distinctiveness in the marketplace. Plaintiffs extensively police unauthorized use of the COACHELLA Marks and have sent countless cease and desist letters to combat misuse or unauthorized use of the COACHELLA Marks.

---

[5] As discussed above, while Plaintiffs may have not necessarily used COACHILLIN since 1999, the public's use of COACHILLIN since at least as early as 2012 has inured to the benefit of Plaintiffs and has conferred trademark rights upon them.

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

60.     Plaintiffs have filed numerous domain name complaints to remedy the registration or use of identical or confusingly similar Internet domain names.

61.     Based on Plaintiffs' use, including the use described herein, Plaintiffs own extensive common law trademark rights in the COACHELLA Marks.

62.     In addition to their extensive common law rights, CMF owns numerous United States registrations for the COACHELLA Marks. Specifically, CMF owns:

a.     United States Service Mark Registration No. 3,196,119 for COACHELLA. This Registration is incontestable under 15 U.S.C. § 1065;

b.     United States Trademark Registration No. 4,270,482 for COACHELLA;

c.     United States Service Mark Registration No. 3,196,129 for COACHELLA (stylized). This Registration is incontestable under 15 U.S.C. § 1065;

d.     United States Trademark Registration No. 4,266,400 for COACHELLA (stylized);

e.     United States Trademark Registration No. 5,235,905 for COACHELLA;

f.     United States Trademark Registration No. 5,235,903 for COACHELLA (stylized);

g.     United States Service Mark Registration No. 3,196,128 for COACHELLA VALLEY MUSIC AND ARTS FESTIVAL. This Registration is incontestable under 15 U.S.C. § 1065;

h.     United States Trademark Registration No. 3,965,563 for COACHELLA VALLEY MUSIC AND ARTS FESTIVAL; and

i.     United States Trademark Registration No. 4,008,651 for COACHELLA VALLEY MUSIC AND ARTS FESTIVAL.

The registration certificates for each of these registrations are attached to this Complaint as Exhibit 6.

63.     Having been widely promoted to the general public, extensively used in interstate commerce, and having exclusively identified Plaintiffs and their goods and services, the COACHELLA Marks symbolize the tremendous goodwill associated with Plaintiffs and Plaintiffs' festival.

64.     The COACHELLA Marks are a property right of incalculable value.

## THE PUBLIC ALREADY ASSOCIATED COACHILLIN' WITH COACHELLA

65.     As discussed above, attendees at the COACHELLA Festival often commemorate the special occasion by posting photos on social media of themselves at the festival with the hashtag #coachillin.

66.     A hashtag serves a function similar to a channel on a social media platform by collecting all the posts tagged with the same tag; thus, visitors and fans of the COACHELLA Festival use the #coachillin hashtag to be included in the collection of posts with the same tag and to find content relating to the COACHELLA Festival.

67.     On Instagram, the #coachillin hashtag has 20,000 posts, the vast majority of which depict or relate to the COACHELLA Festival. On Facebook, the #coachillin hashtag relates to over 2,000 posts, the vast majority of which also depict or relate to the COACHELLA Festival. Similarly, on Twitter, the #coachillin hashtag relates to numerous posts relating to the COACHELLA Festival, though an official count does not appear to be available. Screenshots depicting examples of such posts are attached to this Complaint as Exhibit 7.

68.     Accordingly, Plaintiffs own the COACHILLIN Mark with respect to entertainment and related services, including accommodations and selling apparel.

## DEFENDANTS' INFRINGING CONDUCT

69.     Defendants operate or intend to operate[6] a cannabis-focused cultivation, business park, hotel, and entertainment complex in connection with the COACHILLIN

---

[6] Plaintiffs understand that Defendants' facility is still under construction; however, it appears that at least certain aspects of Defendants' business, such as its apparel business, are operational and advertising is ongoing.

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

wordmark mark (together with its stylized logos shown below, and the marks shown in Defendants' trademark applications for variations on COACHILL INN discussed below, the "COACHILLIN' Marks"), which is advertised to include a live entertainment amphitheater intended for musical performances and events, a resort hotel, as well as related retail merchandise, such as apparel. The business park portion of the development is also advertised to include cannabis cultivation, manufacturing, processing, laboratory testing, distribution, touring, and consumer education, among other cannabis-related services. Defendants' stylized marks are shown below:




Importantly, these design marks depict well-known indicia of the COACHELLA Festival, including palm trees and a Ferris wheel silhouetted against a mountainscape.

70. Defendants advertise the COACHILLIN' complex on their website available at coachillin.com (the "COACHILLIN' website"). Screen captures of the COACHILLIN' website are attached to this Complaint as Exhibit 8.

71. Defendants also advertise the COACHILLIN' complex through a variety of social media sites including YouTube, Facebook, Instagram, and Twitter. Screen captures of Defendants' accounts on these sites are attached to this Complaint as Exhibit 9.

72. Defendants also sell merchandise, including apparel, in connection with the COACHILLIN' Marks on the COACHILLIN' website and advertises on Defendants' social media. Screen captures of Defendants' online store are attached to this Complaint as Exhibit 10.

73. The COACHILLIN' live entertainment events, resort hotel, and apparel are intended to be marketed to many of the same or similar consumers who attend or would attend the COACHELLA Festival, as demonstrated by Defendants' social media posts specifically drawing an association between Defendants' COACHILLIN' branded apparel

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

and the COACHELLA Festival, as shown in the post included in Paragraph 11, above. A copy of this post is attached as Exhibit 11.

74.     As further evidence that Defendants are attempting to draw an association with COACHELLA and trade on its goodwill, and as discussed above, before adopting the COACHILLIN Marks, Defendants acquired two invalid trademark registrations (Nos. 4,597,127 and 5,170,824) for COACHILLIN from an individual named Jeremy M. Joseph.

75.     On February 5, 2014, Defendant Coachillin Holdings' predecessor-in-interest, Jeremy M. Joseph, applied for the COACHILLIN trademark with the USPTO for use in connection with apparel, and on August 19, 2016, Mr. Joseph applied for the same mark for use in connection with on-line retail store services featuring consumer goods. These applications matured to Registrations Nos. 4,597,127 and 5,170,824, respectively (the "Joseph Registrations").

76.     On January 11, 2019, after Coachillin Holdings acquired the Joseph Registrations, Plaintiff CMF filed a cancellation proceeding against the Joseph Registrations at the TTAB on the grounds of, *inter alia*, fraud on the USPTO and the applications being void *ab initio* because the specimens submitted to the USPTO fraudulently showed use of the COACHILLIN mark in commerce as of the requisite date, when in fact the merchandise was never actually produced or placed into commerce. During that proceeding, Mr. Joseph testified that he had never actually sold in connection with the COACHILLIN Mark any t-shirts or other products that he advertised. Defendant Coachillin Holdings subsequently consented to judgement on the grounds of non-use, and the Joseph Registrations were cancelled by the TTAB.[7]

---

[7] At the time that Defendant Coachillin Holdings consented to judgment, the parties were meeting and conferring concerning an amendment to the petition for cancellation to state a claim for fraud based on Defendant's attorney filing a Section 15 declaration at the USPTO to render Registration No. 4,597,127 incontestable. In that declaration, Defendant's attorney falsely stated that "[t]here is no proceeding involving said rights [for the registration] pending and not finally disposed of either in the United States Patent and

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

77.     At deposition during the proceeding that lead to cancellation of those bogus registrations, Mr. Joseph candidly admitted under oath that he specifically selected the COACHILLIN mark to convey a "chill" vibe in connection with the COACHELLA Festival, facts he made apparent to Defendant Coachillin Holdings during negotiations to acquire the registrations. Mr. Joseph also testified that, during negotiations with Defendant Coachillin Holdings, they discussed the "significant potential value [of the Coachillin' mark] with respect to [the] Coachella [Festival], and in particular the potential to monetize the mark."

78.     With full knowledge of these facts, Defendant Coachillin Holdings acquired these registrations and subsequently applied for its own series of COACHILLIN' marks.

79.     In particular, on April 24, 2017, Defendant Coachillin Holdings filed an application for the COACHILLIN trademark at the USPTO in connection with education and entertainment services, and the application was assigned Serial No. 87/422,327. On September 30, 2018, Plaintiffs timely opposed this trademark application at the TTAB, which was assigned Opposition No. 91243895 (the "Opposition").

80.     Defendant Coachillin Holdings subsequently filed applications for sixteen different variations of the mark COACHILL INN (including COACHILL-INN and COACHILL_INN) in connection with entertainment and educational services, hotel services, apparel, or on-line retail store services, all of which Plaintiffs opposed, and those proceedings were consolidated in the Opposition.[8]

81.     Despite Plaintiffs' efforts and requests, Defendants have made clear in the Opposition that they have no intent of ceasing their infringing activities, or plans therefor, absent an injunction, thus forcing Plaintiffs to file this action.

---

Trademark Office or in a court." While this registration has since been canceled, the fraudulent filing by Defendant's counsel further demonstrates Defendant's cavalier attitude concerning its activities.

[8] These applications bear Serial Nos. 88/418,617; 88/418,628; 88/418,632; 88/418,636; 88/418,640; 88/418,642; 88/418,647; 88/418,652; 88/418,658; 88/418,660; 88/418,666; 88/418,669; 88/418,735; 88/418,740; 88/418,827; and 88/418,853.

82.     Defendants are not affiliated with Plaintiffs, or with the COACHELLA Festival.

83.     Defendants are not licensed to use the COACHELLA Marks.

84.     Defendants had constructive notice of Plaintiffs' rights in Plaintiffs' federally registered COACHELLA Marks under 15 U.S.C. § 1072.

85.     On information and belief, Defendants has actual notice of Plaintiffs' rights in the COACHELLA Marks.

86.     The COACHILLIN' Marks are similar in sight, sound, and meaning to the COACHELLA Marks.

87.     Defendants adopted, used, and are using the COACHILLIN' Marks to market its business complex, entertainment complex, live events amphitheater, resort hotel, and apparel because they are similar to the COACHELLA Marks and known to consumers.

88.     Defendants' use or plans for use of the COACHILLIN' Marks to market its entertainment complex, live events amphitheater, resort hotel, and apparel was done with actual knowledge of COACHELLA and the COACHELLA Marks.

## HARM TO PLAINTIFFS AND THE GENERAL PUBLIC

89.     Defendants' unauthorized use of the COACHILLIN Marks, or any similar designation thereto, creates a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of Defendants and their goods and services, and falsely suggests a sponsorship, connection, license, or association of Defendants with Plaintiffs, despite the fact that no such relationship exists.

90.     Defendants' activities are alleged to have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and the COACHELLA Marks, particularly the goodwill and reputation associated therewith.

91.     Defendants' activities are alleged to have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public, who has an inherent interest in being free from confusion, mistake, and deception.

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

# FIRST CAUSE OF ACTION

## (Trademark Infringement Under 15 U.S.C. § 1114)

92.    Plaintiffs reallege and incorporate by reference each of the allegations contained in all preceding paragraphs of this Complaint as though fully set forth here.

93.    Defendants' use of the COACHILLIN Marks, the registered COACHELLA Marks, and confusingly similar designations, is likely to cause confusion, mistake, or to deceive.

94.    The above-described acts of Defendants constitute trademark infringement in violation of 15 U.S.C. § 1114(1), entitling Plaintiffs to relief.

95.    Defendants have unfairly profited from the trademark infringement alleged.

96.    By reason of Defendants' acts of trademark infringement, Plaintiffs have suffered damage to the goodwill associated with the COACHELLA Marks, in amounts to be determined.

97.    Defendants' acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and their federally registered trademarks.

98.    Defendants' acts of trademark infringement have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public which has an interest in being free from confusion, mistake, and deception.

99.    By reason of Defendants' acts and continued recalcitrant behavior, Plaintiffs' remedy at law is not adequate to compensate it for the injuries inflicted by Defendant. Accordingly, Plaintiffs are entitled to entry of a temporary restraining order against Defendants and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

100.   By reason of Defendants' willful and repeated acts of trademark infringement and their recalcitrant behavior, Plaintiffs are entitled to damages, and they are entitled to have those damages trebled under 15 U.S.C. § 1117.

101.   This is an exceptional case making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### (False Designation of Origin Under 15 U.S.C. § 1125(a))

102.   Plaintiffs reallege and incorporate by reference each of the allegations contained in each of the preceding paragraphs of this Complaint as if fully set forth herein.

103.   Defendants' use in commerce of the COACHILLIN' Marks, the COACHELLA Marks, and variations thereof is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Defendants' goods or services are authorized by, sponsored by, approved by, or affiliated with Plaintiffs.

104.   The above-described acts of Defendants constitute trademark infringement of the COACHELLA Marks and false designation of origin in violation of 15 U.S.C. § 1125(a), entitling Plaintiffs to relief.

105.   Defendants have unfairly profited, and continue to unfairly profit, from the actions alleged.

106.   By reason of the above-described acts of Defendants, Plaintiffs have suffered damage to the goodwill associated with the COACHELLA Marks.

107.   The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and the COACHELLA Marks.

108.   The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm the general public which has an interest in being free from confusion, mistake, and deception.

109.   By reason of Defendants' acts, Plaintiffs' remedy at law is not adequate to compensate for the injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled to entry of a temporary restraining order against Defendants and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

110.   Because the above-described acts of Defendants were willful and repeated, Plaintiffs are entitled to damages, and entitled to have those damages trebled under 15 U.S.C. § 1117.

111. This is an exceptional case making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

### THIRD CAUSE OF ACTION

### (Violation of California Unfair Competition
### and Common Law Trademark Law)

112. Plaintiffs reallege and incorporate by reference each of the allegations contained in all preceding paragraphs of this Complaint as though fully set forth here.

113. Plaintiffs are informed and believe that Defendants are in direct competition with Plaintiffs, particularly in the areas of live music, entertainment, hotel accommodation services, and merchandising.

114. Defendants' willful, knowing, and unauthorized promotion, advertisement, sale and offering for sale in, and directed to, California of infringing goods and services causing confusion as to the source of the goods and causing harm to Plaintiffs' goodwill is an unlawful appropriation of Plaintiffs' exclusive rights in the COACHELLA Marks and variations thereof.

115. Such acts constitute unfair trade practices and unfair competition under California Business and Professions Code §§ 17200, et seq., and under the common law of the State of California.

116. Pursuant to California Business and Professions Code § 17203, Defendants are required to disgorge and restore to Plaintiffs all profits and property acquired by means of Defendants' unfair competition with Plaintiff.

117. Due to Defendants' conduct, Plaintiffs have suffered and will continue to suffer irreparable harm. It would be difficult to ascertain the amount of money damages that would afford Plaintiffs adequate relief at law for Defendants' acts and continuing acts. Plaintiffs' remedy at law is not adequate to compensate for the injuries already inflicted and further threatened by Defendant. Accordingly, Plaintiffs are entitled to preliminary and permanent injunctive relief pursuant to California Business and Professions Code § 17203.

118.   Defendants' conduct has been intentional and willful and in conscious disregard of Plaintiffs' rights and with requisite knowledge and intent and, therefore, Plaintiffs are entitled to exemplary or punitive damages under the common law of the State of California in an amount appropriate to punish Defendants and to make an example of them to the community.

## FOURTH CAUSE OF ACTION

### (Cancellation and Refusal of Applications)

119.   Plaintiffs reallege and incorporate by reference each of the allegations contained in all preceding paragraphs of this Complaint as though fully set forth here.

120.   Each of the COACHILLIN' Marks, including those that are the subject of Application Serial Nos. 87/422,327; 88/418,617; 88/418,628; 88/418,632; 88/418,636; 88/418,640; 88/418,642; 88/418,647; 88/418,652; 88/418,658; 88/418,660; 88/418,666; 88/418,669; 88/418,735; 88/418,740; 88/418,827; and 88/418,853, is confusingly similar to the COACHELLA Marks and is therefore likely to cause consumer confusion.

121.   None of the COACHILLIN' Marks has been registered for five or more years.

122.   Registration of the COACHILLIN' Marks would be contrary to law, and Plaintiffs will be harmed by their registration.

123.   Accordingly, Plaintiffs request that registration for each of the COACHILLIN's Marks be refused and/or canceled pursuant to 15 U.S.C. § 1119.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendants as follows:

1.   That the Court enter a judgment against Defendants that Defendants have:

   a. Infringed the rights of Plaintiffs in the registered COACHELLA Marks in violation of 15 U.S.C. § 1114(1);

   b. Infringed the rights of Plaintiffs in the COACHELLA Marks and engaged in false designation of origin in violation of 15 U.S.C. § 1125(a);

   c. Engaged in unfair competition and deceptive acts and practices in violation of California Business and Professions Code §§ 17200, *et seq.*; and

d. Engaged in trademark infringement and unfair competition under California common law.

2. That each of the above acts was willful.

3. That the Court issue a temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining Defendants and their agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, from:

a. Engaging in any infringing activity including advertising, promoting, marketing, franchising, selling, or offering for sale any goods or services in connection with the COACHELLA Marks or any similar mark, including but not limited to the COACHILLIN' Marks;

b. Registering or seeking to register the COACHILLIN' Marks, or any similar designation, as a trademark in the United States in connection with any goods or services that are competitive, similar, or related to the goods or services offered by the Plaintiffs;

c. Engaging in any unfair competition with Plaintiffs; and

d. Engaging in any deceptive acts.

4. That the Court order the abandonment of any application or the cancellation of any registration for any infringing COACHILLIN Mark.

5. That Plaintiffs be awarded damages for Defendants' trademark infringement and unfair competition and that these damages be trebled due to Defendants' willfulness, in accordance with the provisions of 15 U.S.C. § 1117.

6. That Plaintiffs be awarded all profits resulting from Defendants' infringement of Plaintiffs' rights and by means of Defendants' unfair competition with Plaintiffs.

7. That Defendants be ordered to account for and disgorge to Plaintiffs all amounts by which Defendants have been unjustly enriched by reason of the unlawful acts complained of.

8. That Plaintiffs be awarded an amount sufficient to reimburse Plaintiffs for the

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

costs of corrective advertising.

9.     For prejudgment interest on all infringement damages.

10.    That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, California law, and any other applicable provision of law.

11.    That the Court award Plaintiffs their costs of suit incurred herein.

12.    For such other or further relief as the Court may deem just and proper.


Dated: October 26, 2022                    Tucker Ellis LLP

                                           By: /s/David J. Steele
                                           David J. Steele
                                           Howard A. Kroll
                                           Steven E. Lauridsen
                                           Dina Roumiantseva

                                           Attorneys for Plaintiffs
                                           Coachella Music Festival, LLC
                                           Goldenvoice, LLC

1

**DEMAND FOR TRIAL BY JURY**

2        Plaintiffs Coachella Music Festival, LLC and Goldenvoice, LLC hereby demand a

3 trial by jury to decide all issues so triable in this case.

4

5 Dated: October 26, 2022                          Tucker Ellis LLP

6                                                  By: /s/David J. Steele

7                                                  David J. Steele
                                                   Howard A. Kroll
8                                                  Steven E. Lauridsen
                                                   Dina Roumiantseva
9

10                                                 Attorneys for Plaintiffs
                                                   Coachella Music Festival, LLC
11                                                 Goldenvoice, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco